UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/29/2019

-------------------------------------------------------- X
                                                  :

PEGGY ZOULAS,                      :
                                         :
                           Plaintiff,    :

                  -v-                   :                 1:18-cv-2718-GHW

NEW YORK CITY DEPARTMENT OF          :
EDUCATION, CARMEN ASSELTA, and         :         MEMORANDUM OPINION
MARIE LORE,                             :               AND ORDER
                                 Defendants.   :
-------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

## I.    INTRODUCTION

When *pro se* plaintiff Peggy Zoulas, an elementary school teacher, turned 55, things changed for the worse in her career. After 19 years of receiving exemplary teaching reviews, her principal began giving her poor observation reports and criticizing her abilities as an educator. Zoulas' principal, assistant principal, and some of her colleagues began harassing her, belittling her, and denying her professional development opportunities. Zoulas filed a complaint with the State Division of Human Rights, which only added more fuel to the fire.

With this suit, Zoulas asserts claims against her principal, Carmen Asselta, her assistant principal, Marie Lore, as well as the New York City Department of Education (collectively, the "Defendants"). Zoulas alleges that Asselta and Lore discriminated against her, retaliated against her, and subjected her to a hostile work environment in violation of the Age Discrimination in Employment Act of 1967. She further claims that Lore discriminated against her on the basis of religion and disability in violation of Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act of 1990. Because she failed to exhaust her administrative remedies, Zoulas' religion and disability discrimination claims under Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act of 1990 fail. Zoulas, however, plausibly pleads her

discrimination, retaliation, and hostile work environment claims under the ADEA. Therefore, for the reasons set forth below, the Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.

## II.    BACKGROUND

### A.  The Plaintiff and the Defendants

*Pro se* Plaintiff Peggy Zoulas ("Zoulas" or "Plaintiff") is a 57-year-old fourth grade teacher employed by the New York City Department of Education (the "Department of Education"). Dkt. No. 31, First Amended Complaint ("FAC") at ¶ 1. Zoulas teaches at Oliver H. Perry School (the "School") in Greenpoint, Brooklyn. Plaintiff has nineteen years of teaching experience and has extensive experience teaching elementary school. *Id.* at ¶¶ 1, 10. Specifically, Zoulas has taught 5th grade for 10 years and 6th grade for 3 years. *Id.* at ¶ 40. Zoulas alleges that she received exemplary teaching evaluations every academic year from 1997 to 2016. *Id.* at ¶ 51.

Carmen Asselta is the principal of the School. *See* Dkt. No. 44-4 at 3. Maria Lore was the School's assistant principal until her retirement on July 1, 2018. FAC at ¶ 3. Both Asselta and Lore (collectively the "Administrators") are over 50 years old. *Id.* at ¶ 8; *see also* Dkt. No. 44-5 at 3. The Administrators are employees of the Department of Education.

### B.  Factual Background

Zoulas contends that the Administrators began discriminating against her when she turned 55 years old and began walking with a noticeable limp. FAC at ¶ 7. Beginning in the 2016-2017 academic year, and continuing through the next academic year, Zoulas alleges that the Administrators began discriminating and retaliating against her in myriad ways. Zoulas catalogues the allegedly discriminatory actions in detail in her complaint. Below, the Court first summarizes the teaching evaluation system that the Administrators used to evaluate Zoulas. It then describes the specific incidents that Zoulas alleges constitute unlawful discrimination and retaliation.

i.  <u>Teaching Review System Used to Evaluate Performance</u>

New York State Education Law 3012-c establishes the annual professional performance review of classroom teachers and building principals.  Department of Education schools use a teacher evaluation system known as "Advance."  *See* Dkt. Nos. 44-2, 44-3, and 44-4 (collectively "Advance Guides").  Under the Advance system, teachers receive an annual rating composed of two parts:  the Measures of Teacher Practice ("MOTP") and the Measures of Student Learning ("MOSL").  *Id.* at 4-5.  The MOTP is evaluated on a four-point rating scale with the following possible ratings:  highly effective, effective, developing, and ineffective.  *See id.* at 6-7.  In contrast, the MOSL rating is composed of three components, which include the performance of a teacher's students on an assessment of student learning, target population (which refers to the students included in the assessment), and growth measurement (which refers to the method by which student growth is measured on a particular assessment).  *Id.* at 12-13.  The combination of the MOTP and the MOSL ratings result in a teacher's overall rating for a given academic year.  There are four ratings that a teacher can receive as her overall rating:  highly effective, effective, developing, or ineffective.  *Id.* at 17.  Any teacher who receives an overall rating of developing or ineffective must work with her evaluator to develop and implement a Teacher Improvement Plan ("TIP").  *See id.* at 10-11, 56-57.  Zoulas was placed on a TIP for the 2016-2017 academic year, the 2017-2018 academic year, and the 2018-2019 academic year.  FAC at ¶¶ 54, 79, 341.

ii.  <u>Unfair Performance Reviews</u>

During the 2016-2017 and 2017-2018 academic years, Zoulas contends that Asselta deliberately falsified and manipulated her classroom observation reports to harass her and in hopes of creating a justification to dismiss her from her position.  *Id.* at ¶ 53.

### 1. *2016-2017 Academic Year*

Asselta observed Zoulas' classroom on four occasions during the 2016-2017 academic year: (i) March 17, 2017; (ii) April 28, 2017; (iii) May 17, 2017; and (iv) June 1, 2017. *Id.* at ¶¶ 61-64, 67-69, 71, 73-75. Of these four observations, two occurred during the last period on a Friday afternoon, shortly after Zoulas' students had just returned from physical education and, as a result, would have difficulty focusing. *Id.* at 59. Zoulas contends that her observation report for the April 28, 2017 lesson contained "false and baseless statements about the lesson . . . for which no evidence was provided." *Id.* at ¶ 68. During the 2016-2017 academic year, Zoulas received a MOTP rating of Developing/Ineffective instead of a rating of Effective or Satisfactory, which she had received in each of her prior years of teaching. *Id.* at ¶¶ 54-58. Furthermore, during a span of five weeks during that academic year, Zoulas received four disciplinary letters. *Id.* at ¶ 9.

### 2. *2017-2018 Academic Year*

During the 2017-2018 academic year, Asselta again observed Zoulas' classroom on four occasions: (i) January 31, 2018; (ii) March 28, 2018; (iii) May 18, 2018; and (iv) June 1, 2018. *See id.* at ¶¶ 80-82, 85-87, 90-98. Zoulas contends that Asselta was equally unfair in her classroom observations and performance evaluations for the 2017-2018 academic year. *See id.* at ¶¶ 62-63. Zoulas and Asselta met to debrief regarding the January 31, 2018 observation on February 15, 2018. *Id.* at ¶ 97. During the meeting, Zoulas claims, Asselta gave feedback for portions of the lesson that she did not observe and provided no comments on the part that she did observe. *Id.* at ¶¶ 97-98. When Zoulas attempted to defend herself, Asselta became argumentative, defensive, and accused her of being unreceptive to feedback. *Id.* at ¶ 100. Asselta also pulled out her journal and began cataloguing Zoulas' comments in an intimidating fashion. *Id.* Later that day, Zoulas e-mailed Asselta and informed her that she believed that she was being harassed and retaliated against. *Id.* at ¶ 101.

Zoulas received her observation report for the January 31, 2018 observation on March 19, 2018. *Id.* at ¶ 102. The report stated that she "resists feedback on teaching performance from either supervisors or more experienced colleagues." *Id.* Zoulas contends that Asselta's reference to Zoulas' colleagues in the observation report was an allusion to Ms. Peluso, a 23-year-old teacher who had "no teaching experience." *Id.* Zoulas filed a grievance with her union three days after receiving the observation report. *Id.* at ¶ 103. She complained that Asselta had not provided feedback on her lesson "because the feedback is supposed to be specific to the lesson that was actually observed." *Id.* at ¶ 103.

Zoulas alleges that Asselta also falsified criticism in her observation report reviewing the March 28, 2018 observation. *Id.* at ¶¶ 85-87. Again, Zoulas argues that the observation report evaluating this observation "contained numerous negative statements about [the] lesson for which . . . . Asselta provided no evidence." *Id.* at ¶ 85. As before, Asselta directed Zoulas to observe Ms. Peluso and Ms. Lodola, two 23-year old teachers, each of whom had less than one year of teaching experience. *Id.* at ¶ 110. In June of 2018, Zoulas filed a grievance with her union. *Id.* at ¶ 106.

Asselta next observed Zoulas' classroom on May 18, 2018. *Id.* at ¶ 90. Asselta offered verbal feedback on this observation in a meeting on May 21, 2018. *Id.* at ¶¶ 92-93. During the meeting, Zoulas contends, Asselta "proceeded to berate Ms. Zoulas' lesson for 45 minutes and claimed that virtually everything Ms. Zoulas did was wrong." *Id.* at ¶ 90. What's more, Zoulas contends that "Asselta was searching to find fault with the lesson by distorting and manipulating what actually occurred." *Id.* at ¶ 91. Again, when Zoulas attempted to rebut what she felt to have been unfair criticism, Asselta took out her journal and documented her comments in her presence. *Id.* at ¶ 92. In the observation report for Zoulas' May 18, 2018 lesson, Asselta stated that she "dismisses supervisor feedback on the grounds that she believes [that] she is an excellent teacher." *Id.* at ¶ 93.

Zoulas' final classroom observation of the 2017-2018 academic year occurred on June 1, 2018. *Id.* at ¶ 94. Asselta provided Zoulas with her observation report for the June 1, 2018 observation on June 22, 2018, after she was served with notice of this suit. *Id.* at ¶ 94. In the observation report evaluating the June 1, 2018 lesson, Asselta rated Zoulas as effective and stated that she had done "more of what she had been asking." *Id.* at ¶ 95. Zoulas, however, contends that the positive commentary in the June 22, 2018 observation report "is deliberately falsified and manipulative because [she] ha[d] demonstrated lessons . . . like this throughout the school year." *Id.* at ¶ 96. Zoulas again received an MOTP rating of Developing for the 2017-2018 academic year. *Id.* at ¶ 79. As in the previous academic year, Zoulas contends that she finished with this rating because Asselta "made negative statements in [her] observation reports for which she provided no evidence." *Id.* at ¶ 80.

### iii. Denial of Opportunities

Zoulas alleges that the Administrators discriminated against her based on her age by failing to provide her with the same opportunities as her colleagues. In September of 2015, the School initiated an Eco Schools program. *Id.* at ¶ 28. Zoulas discussed her interest in participating in the program with Asselta. She expressed particular interest in leading the STEM lab. *Id.* These discussions took place during the 2015-2016 academic year and continued into the 2016-2017 academic year. *Id.* at ¶ 29. During the 2016-2017 academic year, Asselta told Zoulas that she "already kn[ew] who [she] want[ed] to run the STEM lab." *Id.* at ¶ 30. Asselta selected a 33-year-old teacher with no science degree, no science background, and no experience teaching science. *Id.* at ¶ 31.

In September of 2016, Zoulas applied to participate in the Green Stem After-School Program. *Id.* at ¶ 32. Zoulas contends that Asselta selected a less-qualified candidate for the position. *Id.* at ¶ 33. When that candidate became ill and could not fulfill his responsibilities, Lore

selected another teacher, Ms. Kubis, who had not originally applied for the position. *Id.* at ¶ 34. Kubis had to withdraw from the program and recommended that Lore ask Zoulas to replace her; however, Lore selected a 25-year-old physical education teacher who had not applied for the position. *Id.* at ¶ 38.

Plaintiff also claims that the Administrators discriminated against her based on her age by denying Zoulas her preferred teaching assignment for the 2017-2018 academic year. *Id.* at ¶ 39. In May of 2017, Zoulas submitted her preference sheet for the 2017-2018 academic year. She asked to teach 5th grade math or science. Instead, she was assigned to teach 4th grade. *Id.* at ¶ 40. Zoulas has over ten years of experience teaching 5th grade. *Id.* However, the Administrators assigned the 5th grade math position to a 38-year-old teacher with no experience teaching 5th grade. *Id.* at ¶ 41.

Finally, Zoulas contends that Asselta denied her the same professional development opportunities as other staff members and that she did not permit her to attend workshops outside of the School. *Id.* at ¶ 182. Zoulas contends that Asselta "purposefully den[ied] her training" from 2012 to the date of the filing of her complaint. *Id.* at ¶¶ 187-88. There is no formal process by which teachers can request or apply for professional development opportunities. *Id.* at ¶ 187. The decision is made entirely at Asselta's discretion. *Id.* In September of 2018, after Asselta learned that Zoulas had filed this lawsuit, she told her staff that they could request professional development opportunities. *Id.* at ¶ 189. Zoulas alleges that Asselta has not allowed her to attend professional development sessions outside of the School. The teachers who Asselta permits to attend professional development sessions outside of the School are in their mid-twenties. *See id.* at ¶ 185; *see also* Dkt. No. 48, Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Amended Complaint ("Opposition") at 13.

           iv.   <u>Alleged Harassment, Hostile Behavior, Humiliation, Undermining of Authority, and Retaliation</u>

Zoulas alleges that the Administrators harassed, embarrassed, and belittled her by virtue of

the following incidents and actions.

1. *Mistyped Phone Extension in Staff Directory and Unnecessary Calls*

Zoulas claims that the Administrators harassed her by instructing individuals to repeatedly call her classroom while she was teaching. In 2016, for example, Lore instructed a school aide to type Zoulas' phone extension under another teacher's name. *Id.* at ¶ 242. This resulted in Zoulas' receipt of a number of calls intended for another teacher, which disrupted her classroom. *Id.* at ¶ 242. Zoulas alleges that she was the only teacher whose extension was typed under another teacher's name. *Id.* at ¶ 243.

Zoulas also alleges that Asselta and Lore each called her classroom in an effort to disrupt her teaching. Zoulas contends that throughout the 2017-2018 academic year, Lore called her classroom and asked for students that were in other teachers' classrooms. *Id.* at ¶ 309. In March of 2018, Zoulas contends that Lore "crank-called" her classroom and hung up when the student assigned to answer the phone picked up. *Id.* at ¶ 312. Zoulas contends that Asselta also used the telephone to disrupt her instructional time. In January of 2018, for instance, Asselta called Zoulas and attempted to have a meeting regarding student performance while she was teaching. *Id.* at ¶ 304. In March of 2018, Asselta asked a secretary to call Zoulas while she was teaching to inquire about student folders and reading levels even though she had already submitted this information. *Id.* at ¶ 305. Zoulas e-mailed Asselta to inform her that she had returned the student folders; however, Asselta did not respond to this e-mail and instructed the secretary to continue to call her during her teaching periods. *Id* at ¶ 307.

2. *Omission from the 2017 School Directory*

On October 23, 2017, the entire School was given copies of the staff directory. *Id.* at ¶ 226. Zoulas' name was not included. *Id.* In lieu of her name, a row of stars was printed. *Id.* Zoulas contends that Lore instructed Ms. Domarecki, a school aide, to exclude her name from the

directory. *Id.* After Domarecki typed the directory and omitted Zoulas' name, she began laughing at Zoulas every time she saw her in the hallway. *Id.* at ¶ 230.

Zoulas informed Asselta that a school aide had distributed the staff directory from which she had been omitted to the entire School. *Id.* at ¶ 232. Zoulas asked Asselta to instruct an aide to collect the directories because she found the omission embarrassing. *Id.* at ¶ 232. In response, Asselta "stated sarcastically and dismissively that it was not done on purpose." *Id.* at ¶ 233. Asselta then yelled "I'm not having them collected. You need to go back to your classroom." *Id.* A school aide offered to collect the directories, but Asselta refused to allow her to do so. *Id.* at ¶¶ 234-35.

Later that day, Zoulas e-mailed Asselta and explained that she found the situation regarding the school directory "extremely embarrassing" and asked that it "be addressed properly and expeditiously." *Id.* at ¶ 236. Asselta did not respond to Zoulas' e-mail. *Id.* at ¶ 236. Zoulas then filed a grievance with her union regarding the staff directories. During a step one grievance meeting on October 27, 2017, Asselta told Zoulas and her union representative that she would not collect the directories; however, she said that she would instruct staff members to discard them within a week of the meeting. *Id.* at ¶ 238.[1] Asselta never instructed the staff to discard the staff directories. *Id.* at ¶ 239. Zoulas raised this issue at a step two grievance proceeding. *Id.* at ¶ 239. The following month, a school aide printed revised directories, but simply "threw them into the corner on the floor of the teacher's room" instead of distributing them to each teacher, as was the standard practice in the School. *Id.* at ¶ 241.

### 3. *Loss of 2016 Student Articulation Cards and Inferior Technology*

In September of 2016, Lore told Zoulas that she lost her articulation cards, which contained information regarding her incoming students. *Id.* at ¶ 244. As a result, Zoulas had to begin the

---

[1] In her complaint, Zoulas states that this meeting occurred on October 27, 2018; however, given the date at which the staff directory incident occurred and, furthermore, based on the date that she filed her amended complaint, the Court understands this meeting to have taken place on October 27, 2017.

school year without any information about her students.  *Id.*  Zoulas' articulation cards were the only ones that were lost.  *Id.* at ¶ 245.  Zoulas asked the Administrators to provide new articulation cards or additional information about her students, but they ignored her requests.  At the end of the 2016-2017 academic year, Lore entered Zoulas' classroom and placed the articulation cards in her desk.  *Id.* at ¶ 245.

Zoulas also contends that none of her computer equipment works.  *Id.* at ¶ 249.  During the 2016-2017 academic year, Lore instructed a custodian to remove Zoulas' printer from her classroom and to replace it with one that did not work.  *Id.* at ¶ 248.  Furthermore, Zoulas has three dated and non-functioning computers in her classroom.  *Id.* at ¶ 249.  She complained to Asselta about both the printer and the non-functioning computers but was ignored.  *Id.* at ¶ 251.  Younger teachers at the school have several working computers in their classrooms.  *Id.* at ¶ 252.

### 4.  *Violation of Standard Field Trip Approval Process*

Zoulas contends that the Administrators treated her unfairly and in a hostile manner each time that she tried to plan a field trip for her students.  The School follows a standard protocol when teachers propose field trips.  *Id.* at ¶ 268.  Teachers submit their trip plans to Lore for approval, who then checks for scheduling conflicts, and directs the secretary to make arrangements.  *Id.* at ¶ 270.  Asselta does not typically participate in or oversee this process.  *Id.* at ¶ 271.

When Zoulas proposed trips, however, Asselta called her into her office and asked her to justify the trip that she had planned.  *Id.* at ¶ 272.  Weeks and, sometimes, months would go by without Asselta's approval.  *Id.* at ¶ 272.  Zoulas alleges that this happened to her in November of 2017.  Plaintiff proposed a trip to the Brooklyn Bridge Conservancy to take place in May of 2018.  *Id.* at ¶ 273.  Two other teachers proposed the same trip and received permission the same day that they requested it.  *Id.* at ¶ 273.  Zoulas filed a formal grievance with the public employee relations board.  *Id.* at ¶¶ 275-76.  It was only after Zoulas filed this grievance that Asselta approved of the

trip.  *Id.*

5.  *Undermining Zoulas' Authority in Front of Students, Parents, and Peers, and Conspiring Against Her*

Zoulas claims that the Administrators repeatedly undermined her authority in front of students, parents, and other teachers.  She further contends that the Administrators conspired with students, parents, and other teachers to undermine her.  Zoulas alleges that the Administrators carried out those actions to advance the "continuous discouragement and disparagement of [her] . . . working for the [Department of Education]."  In the complaint, Zoulas identifies seven instances of this behavior.  The first occurred in October of 2016 when Zoulas disciplined a student who was acting recklessly.  *Id.* at ¶ 122.  Shortly thereafter, the Administrators entered her classroom and reprimanded Zoulas in front of her students without conducting an inquiry into whether she acted inappropriately.  *Id.* at ¶ 124.  Days later, the Administrators formally reprimanded Zoulas for her behavior toward the student without providing any support for their criticism.  *Id.* at ¶ 125.

The second incident occurred two weeks later during dismissal from school.  Zoulas was discussing a homework assignment that she had assigned with one of her student's parents.  *Id.* at ¶ 126.  Lore approached Zoulas in the midst of her conversation and said to the parent, "[Zoulas] had better not be giving too much homework . . . . [Y]ou let me know if you have any problem with . . . Zoulas' homework assignments."  *Id.* at ¶ 127.

The third instance occurred months later, in January 2017, when a student's hand became stuck in a tight space.  *Id.* at ¶ 128.  Zoulas attempted to attend to the student, but Asselta interceded, pulled the student's hand from the space, and escorted him to the nurse's office.  *Id.* at ¶¶ 129-30.  Asselta then investigated the incident and asked a number of students to write witness statements.  *Id.* at ¶¶ 131-133.  Zoulas asked to participate in a meeting with one of the students, but Asselta told her that she had to get out of the room.  *Id.*  Later that day, Asselta approached Zoulas and told her that "[a] veteran teacher such as [she] should know how to prevent instances like the

1

one that just occurred from happening." *Id.* Asselta also stated that Zoulas' age was responsible for her inability to control a classroom. Specifically, she stated that Zoulas was "getting up there in years . . . [that she was] just too old for this job, and [that she] should just retire." *Id.* at ¶ 136. Zoulas contends that Asselta does not discipline younger teachers for much more serious incidents involving students. *See id.* at ¶ 141 (alleging that Asselta did not give teacher a notice for file after student fell off of a roof on the second floor of the school and broke his arm). After the incident, the student's mother told Zoulas that her son had told her that Asselta was "trying to get rid of [Zoulas]." *Id.* at ¶ 138. Weeks later, a Department of Education employee independently confirmed that the student told his mother that Asselta wanted to get rid of Zoulas and that Asselta had asked the student to assist her in that endeavor. *Id.* at ¶¶ 139-40.

The fourth instance occurred in January 2018 when Zoulas required assistance regaining control of a student who was throwing food, running across the classroom, making inappropriate gestures, and grabbing other children. *Id.* at ¶ 148. After Zoulas called the security desk, Lore and another teacher arrived at her classroom. *Id.* at ¶ 150. Neither Lore nor the other teacher asked Zoulas about the situation. Instead, Lore "waved her hand at . . . Zoulas in a dismissive and annoyed manner" and said, angrily, "I don't need to know anything from you" in front of all of Zoulas' students. *Id.* at ¶ 151. Lore then asked two students to write witness statements describing the incident. *Id.* at ¶¶ 153-54. Lore did not ask Zoulas to provide a statement of what happened. *Id.* at ¶ 154.

The fifth example of the Administrators' undermining behavior took place in April of 2018. One of Zoulas' students informed her that he and his mother made an agreement with Asselta in which she instructed him to inform Mr. Guito, one of the School's counselors, if Zoulas disciplined him. *Id.* at ¶ 161. The student informed Zoulas of this arrangement after she reprimanded him in front of other students, which, she alleges, humiliated her by diminishing her authority and status as

the teacher. *Id.* at ¶¶ 162-64. Weeks later, the same student was inappropriately touching another student. *Id.* at ¶ 166. Asselta held a conference with the student's mother and grandmother to discuss this behavior. Zoulas asked to attend, but Asselta refused. *Id.* at ¶ 167. When discussing the incident with one of the parents, Asselta stated, "Ms. Zoulas appears tired and old and isn't physically up to managing the class . . . she should just retire." *Id.* at ¶ 171.

The sixth example occurred a month later, during Asselta's observation of Zoulas' classroom on May 18, 2018. During the observation, a student was repeatedly interjecting and disrupting the lesson. *Id.* at ¶¶ 173-74. Although Zoulas assured the student that she would address his comments later in the lesson, Asselta began speaking with the student and told him that she didn't "understand why Ms. Zoulas doesn't want to listen to [his] idea" and that Zoulas was "wrong for ignoring him." *Id.* at ¶¶ 175-76.

Finally, Zoulas alleges that Lore harassed her every day of the 2017-2018 academic year. Specifically, Zoulas contends that Lore made trivial comments in front of Zoulas' students and their parents in an effort to embarrass her. *Id.* at ¶¶ 325-26. She also contends that Lore would dump papers that Zoulas left in Asselta's tray into the trash. *Id.* at ¶ 327.

### 6. *Mocking Zoulas' Limp*

Zoulas contends that Lore mocked her, laughed at her, and intimidated her on several occasions because she walks with a noticeable limp. *Id.* at ¶ 300. Specifically, in March of 2017, Zoulas contends that Lore squatted in front of her and began to stare and laugh. *Id.* at ¶ 301. Additionally, in the spring of 2018, as the staff was preparing to take a group photograph, Zoulas claims that Lore walked up to her, stomped her foot in any aggressive and loud manner, and laughed at her. *Id.* at ¶ 302.

### 7. *The Campaign to Oust Older Employees*

In the complaint, Zoulas claims that the Administrators discriminated against her as a result

of the Fair Student Funding formula (the "FSF"). Zoulas contends that the FSF creates an incentive for the Defendants to engage in illegal, discriminatory practices to remove higher-paid teachers. *Id.* at ¶ 192. Zoulas argues that Asselta informed the staff that the School's budget was very tight and that she was "constantly being pressured by the [Department of Education] to decrease the . . . budget." *Id.* at ¶ 196. Zoulas alleges that Asselta broadcasted these concerns in an effort to "harass[] and intimidat[e] . . . older staff . . . ." *Id.* at ¶ 200.

Zoulas also contends that the Administrators attempted to drive older employees from their positions. In 2017, for example, Zoulas claims that the Administrators began harassing Raul Fantuzzi, a 63-year-old school safety agent. Fantuzzi had an unblemished 32-year tenure and had been working at the School for 15 years. *Id.* at ¶¶ 207-09. Zoulas alleges that Asselta called Fantuzzi's supervisor while he was working a summer program at another school and instructed the supervisor to harass him. *Id.* at ¶ 208. In September 2017, when Fantuzzi returned to the School for the start of the academic year, Asselta began calling him into her office, making false accusations, and instructed a parent to complain about him. *Id.* at ¶ 209. Asselta also told many staff members that she wanted to replace Fantuzzi with a "young guy." *Id.* at ¶ 210. Fantuzzi was then transferred to another school and replaced with a security officer under the age of 30. *Id.* at ¶ 212.

Furthermore, Zoulas claims that Asselta requires three teachers over the age of 50 to change their classrooms ever year and, sometimes, more than once a year, without reason. Zoulas alleges that younger teachers are almost never asked to change rooms. FAC at ¶¶ 217-18. During the 2016-2017 academic year, Zoulas also argues that the Administrators forced another teacher, Ms. Czaskiewicsz, who was then 62, to retire. *Id.* at ¶ 213. Specifically, Zoulas contends that Asselta placed Czaskiewicsz in a new position and assured her that she would receive substantial support in the new role. *Id.* at ¶ 214. Asselta then gave her repeated negative performance reviews until she agreed to leave her position. *Id.* Asselta replaced Czaskiewicsz with a 23-year-old teacher. Finally,

Zoulas contends that the Administrators reviewed older teacher's lessons more harshly than those of younger teachers. *Id.* at ¶¶ 143-44, 293.

### 8. *Zoulas' Refusal to Participate in Lore's Prayer Group*

Zoulas contends that Lore treated her unfavorably because she did not participate in religious meetings that took place in the School. Zoulas claims that Lore conducted daily prayer groups in the School's copy room throughout the 2016-2017 and 2017-2018 academic years. *Id.* at ¶ 314. Zoulas alleges that staff members who regularly attended the prayer meetings received preferential treatment and "were told that they will be saved." *Id.* at ¶ 314. Zoulas contends that Lore made it clear that "members of her prayer group will receive good ratings from her." *Id.* at ¶ 316. Plaintiff claims that Lore actively recruits staff members to join her prayer group. She does this by distributing handouts with biblical quotes at the School's security desk. *Id.* at ¶ 317. Furthermore, Lore encourages staff members to contribute to charities that she supports. *Id.* at ¶ 318. Lore keeps records of who has donated and gives them preferential treatment. *Id.* at ¶ 320. Zoulas contends that her lack of involvement in the prayer group and her failure to donate to the charities caused Lore to treat her with hostility and view her as "disposable." *Id.* at ¶ 323.

### 9. *Unfair Performance Reviews*

Zoulas alleges that Asselta gave her negative classroom observation and performance reviews for the 2016-2017 and 2017-2018 academic years. *Id.* at ¶ 53. Zoulas claims that Asselta gave her these negative reviews "with the express intention of . . . undermining [her] belief in her own ability. . . discouraging . . . [her] from continuing employment with the [Department of Education], . . . documenting alleged poor teaching performance for Ms. Zoulas to support grounds for a later dismissal. . . . [and] creating a false pretext by deliberately falsifying and manipulating observation reports to justify later dismissal and further harassment." *Id.*

10. *Retaliation for Filing a Complaint with the State Division of Human Rights*

Zoulas filed a complaint with the State Division of Human Rights (the "SDHR") on June 8, 2017.[2] *Id.* at ¶ 219. The SDHR dismissed the complaint on November 7, 2017. *Id.* at ¶ 221. While Zoulas contends that the Administrators subjected her to harassment before her filing of the SDHR complaint, she claims that certain of the Administrators' actions constituted retribution for her filing the SDHR complaint. *Id.* Furthermore, after the SDHR dismissed the complaint, Zoulas alleges that the Administrators "began a campaign of covert retaliatory discrimination." *Id.* at ¶ 221. Specifically, after the dismissal of the SDHR compliant, Zoulas contends that Asselta directed Peluso to harass and assert false accusations against her. *Id.* at ¶ 279. In particular, Peluso accused Zoulas' students of being noisy in the hallways, "berated her in front of her students," and threatened to report her to Asselta. *Id.* at ¶ 280. When Zoulas reported Peluso's behavior to Asselta, she said that Peluso "is a nice, young lady and does not harass people." *Id.* at ¶ 282. Asselta also told Zoulas, "you're a dinosaur and its time you started taking advice from the younger teachers. You're trapped in a time warp." *Id.* at ¶ 283.

Zoulas further contends that Asselta recruited Guito to harass her in retaliation for her filing of the SDHR complaint. *Id.* at ¶ 287. Zoulas claims that Guito entered her classroom under the pretense of observing a student with special needs, but, in actuality, stayed for 45 minutes to observe her. *Id.* at ¶ 287. At the end of the observation, Guito asked her why Zoulas made the student with special needs sit in the corner of the classroom. Zoulas e-mailed Asselta to complain about Guito's observation and to offer to move the student's seat if necessary. Asselta never responded. *Id.* at ¶ 291.

---

[2] In the Motion to Dismiss, the Defendants assert that Zoulas filed her complaint with the SDHR on May 18, 2017. *See, e.g.*, Motion to Dismiss at 11. In her complaint, Zoulas alleges that she filed the SDHR complaint on June 8, 2017. *See, e.g.*, FAC at ¶ 220. The SDHR complaint appears to be dated June 8, 2017. *See* Blair Decl., Ex. D at pg. 9. Accordingly, for the purposes of deciding this motion, the Court understands Zoulas to have filed her SDHR complaint on June 8, 2017.

Zoulas also contends that the Administrators retaliated against her for filing the SDHR complaint by attempting to pressure her into signing her observation reports without having an opportunity to review them. *Id.* at ¶¶ 253-59. The School typically provided teachers with the opportunity to review their observation reports before a teacher signs off on them. *Id.* at ¶ 253. On March 23, 2018, however, Lore demanded that Zoulas sign her observation report as she was leaving school for the day. *Id.* at ¶ 256. When Zoulas explained that she had already signed out and was en route to an appointment, the Administrators wrote that she had refused to sign the report at the top of the report. *Id* at ¶¶ 256-57. On May 8, 2018, Asselta instructed a secretary to disrupt Zoulas' lesson and demand that she sign an observation report reviewing her March 28, 2018 lesson. *Id.* at ¶ 259. When Zoulas explained that she could not review and sign the report at that moment, Asselta again wrote that she had refused to sign the observation report. *Id.* at ¶ 262. The Administrators did not show Zoulas the observation reports with their handwritten notes. Zoulas did not see the handwritten notes on those observation reports until June of 2018, when she asked to view all of her observation reports before signing off on her end-of-the-year MOTP rating. *Id.* at ¶ 264. Zoulas contends that the Administrators pressured her into signing those reports and wrote that she refused to sign them so that they could document alleged wrongdoings to build a case for her termination. *Id.* at ¶ 262.

Zoulas also contends that the Administrators retaliated against her by screaming at and embarrassing her students in front of the entire school. *See, e.g.*, *id.* at ¶¶ 285, 290-91. In 2017, Zoulas claims that Lore intentionally lost a poster that one of her students had submitted as part of a poster-making contest. *Id.* at ¶¶ 328-30. Zoulas further contends that Lore embarrassed and humiliated the student by refusing to acknowledge her in an assembly about the contest, despite acknowledging all other participants.

Furthermore, during the 2017-2018 academic year, Zoulas took her students to a leadership

assembly; Lore had instructed a teacher to give the assignment relevant to the assembly to all classes except for Zoulas'. *Id.* at ¶ 333. During both the 2016-2017 and 2017-2018 academic years, Zoulas contends, the Administrators did not allow her students to make calls to their parents or pick up their bus passes in the main office even though they allowed students in all other classes to do so. *Id.* at ¶ 335. When Zoulas sent her students to the office to do those things, Lore would come to her classroom, yell at her, and tell her that she was "not to send students to the main office for any reason." *Id.* at ¶ 336. Zoulas also contends that Asselta called her classroom last during morning line up every day, which forced them to recite the pledge of allegiance while ascending the stairs and caused them to be late to their first period class. *Id.* at ¶ 339.

### C. Causes of Action

Because Zoulas proceeds *pro se*, the Court must construe the allegations in her complaint to raise the strongest claims that they suggest. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam). In her complaint, Zoulas asserts claims of discrimination, harassment, retaliation, and hostile work environment under the Age Discrimination in Employment Act of 1967 (the "ADEA"). FAC at pg. 1, ¶ 344. Because Zoulas proceeds *pro se*, however, the Court does not limit its analysis to these claims. *See McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 155 (2d Cir. 2017). The Court, therefore, construes Zoulas' complaint to assert the following causes of action: (i) age discrimination under the ADEA; (ii) retaliation under the ADEA; (iii) hostile work environment under the ADEA; (iv) religious discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"); and (v) disability discrimination under Title I of the Americans with Disabilities Act of 1990 (the "ADA").

Zoulas' complaint can be construed to raise claims under the New York State Human Rights Law (the "NYSHRL") and the New York City Human Rights Law (the "NYCHRL"), however Zoulas has expressly disclaimed and abandoned any such claims. The Defendants moved to dismiss

Zoulas' claims arising under the NYSHRL and NYCHRL because they were procedurally barred. *See* Motion to Dismiss at 10-12. The Defendants argued that Zoulas' claims under the NYSHRL and the NYCHRL were bared by New York Education Law § 3813(1), or, in the alternative, by the election of remedies doctrine. New York Education Law § 3813(1) provides that no claim involving the rights or interests of a school district may be brought against the district or its officers without first filing a written notice of claim on the governing board of the Department of Education within ninety days of the claim arising. *See* N.Y. Educ. L. § 3813(1). The Defendants also argued that the election of remedies doctrine, which precludes a party who files a complaint adjudicated by the SDHR from filing suit in court on the same claims, bars Zoulas' claims under the NYSCHRL and the NYCHRL. Zoulas did not contest the Defendants' arguments with respect to either New York Education Law § 3813(1) or the election of remedies doctrine. Neither did she assert that she had satisfied the obligation to provide a notice of claim. Instead, Zoulas responded to the arguments presented by the Defendants with respect to her non-federal claims by expressly disclaiming any cause of action under the NYSHRL or the NYCHRL. *See* Opposition at 9 ("Plaintiff, Ms. Zoulas, has specifically made all claims under the Federal ADEA [l]aw and has not made any claims under the New York State and City Human Rights Law."). For these reasons, the Court understands that Zoulas has expressly abandoned those claims in the face of the Defendants' motion to dismiss them. On that basis, the Court dismisses any such claims without prejudice.

## III.    PROCEDURAL HISTORY

Zoulas filed her initial complaint on March 27, 2018. Dkt. No. 1. Zoulas filed an amended complaint, the operative complaint in this action, on September 27, 2018. Dkt. No. 31. On December 7, 2018, the Defendants filed a motion to dismiss the amended complaint (the "Motion to Dismiss"). Dkt. No. 43. Plaintiff filed the Opposition on January 9, 2019. Dkt. No. 48. Defendants filed their reply (the "Reply") on January 28, 2019. Dkt. No. 49.

## IV.    LEGAL STANDARDS

### A.  Standard of Review Under Rule 12(b)(6)

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S at 678 (citing *Twombly*, 550 U.S. at 556). "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Comm'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 544).

Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The court must accept all facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Burch v. Pioneer Credit Recovery, Inc.*, 552 F.3d 122, 124 (2d Cir. 2008) (per curiam). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678-79, and courts need not give "credence to plaintiff's conclusory allegations." *Cantor Fitzgerald, Inc. v. Lutnick*, 313 F.3d 704, 709 (2d Cir. 2002) (internal quotation marks and citation omitted); *see also Twombly*, 550 U.S. at 561 ("'[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do.'").

Because Zoulas proceeds *pro se*, the Court must liberally construe the allegations in her complaint and "interpret[ ] [them] to raise the strongest arguments that they *suggest*." *Triestman*, 470 F.3d at 474; *see also, e.g., Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, "dismissal of a *pro*

*se* complaint is [ ] appropriate where a plaintiff has clearly failed to meet the minimum pleading requirements." *Rahman v. Schriro*, 22 F. Supp. 3d 305, 310 (S.D.N.Y. 2014) (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997)). Therefore, the Court's "'duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it.'" *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal citations omitted).

In determining the adequacy of a claim under Rule 12(b)(6), a court is generally limited to "facts stated on the face of the complaint," "documents appended to the complaint or incorporated in the complaint by reference," and "matters of which judicial notice may be taken." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). In deciding this motion, the Court considered documents that were either integral to the claims asserted in the complaint or incorporated by reference into the complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). For a document to be integral to a complaint, "the plaintiff must have (1) 'actual notice' of the extraneous information and (2) 'relied upon th[e] documents in framing the complaint.'" *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (quoting *Chambers*, 282 F.3d at 153). While the Court must accept the facts as alleged in the complaint, "when any allegations contradict the evidence contained in the documents relied upon by a plaintiff, the documents control, and the Court need not accept the allegations contained within the complaint as true." *Rozsa v. May Davis Group, Inc.*, 187 F. Supp. 2d 123, 128 (S.D.N.Y. 2002).

The Court considered the Advance Guides in deciding this motion. The Court concludes that Zoulas had actual notice of the information relating to the Department of Education's teacher rating methodology. It rests this conclusion on Zoulas' representations in her complaint that she received multiple reviews under this system. Furthermore, Zoulas relied on the information contained in these documents in framing her complaint because she alleges that the Administrators discriminated against her by manipulating her observations so that she would receive a lower rating

pursuant to the Advance Guides.  The Court has also considered the complaint and rebuttal that

Zoulas filed with the SDHR.  The Court concludes that Zoulas' SDHR complaint and rebuttal are

incorporated by reference because she includes allegations contained in these documents in her

complaint and opposition and explicitly cites them in both filings.  *See, e.g.*, FAC at ¶¶ 219, 278;

Opposition at 7, Nos. 1-3, 23 No. 6.  Furthermore, the Court is permitted to take judicial notice of

Zoulas' filings with the SDHR.  *See, e.g.*, *Isbell v. City of New York*, 316 F. Supp. 3d 571, 587 (S.D.N.Y.

2018); *Mejia v. New York City Health & Hosps. Corp.*, No. 13 CIV. 2434 WHP, 2014 WL 2115109, at

*2 (S.D.N.Y. May 19, 2014).

## V.     DISCUSSION

### A.  Timeliness

#### i.  Retaliation and Discrimination Claims

Before a plaintiff may assert claims under Title VII or the ADEA in federal court, she must

present the claims forming the basis of such a suit in a complaint to the EEOC.  *See Littlejohn v. City

of New York*, 795 F.3d 297, 322 (2d Cir. 2015) (Title VII); *McPherson v. New York City Dep't of Educ.*,

457 F.3d 211, 213 (2d Cir. 2006) (ADEA).  The Second Circuit has explained, "as for the

permissible temporal scope of a federal claim of employment discrimination, generally if the plaintiff

has filed an administrative claim in a state whose laws prohibit such discrimination, the limitations

period for filling an action is 300 days after the alleged unlawful practice."  *Davis-Garett v. Urban

Outfitters, Inc.*, 921 F.3d 30, 42 (2d Cir. 2019).  "Where the plaintiff complains of discrete

discriminatory or retaliatory acts such as 'termination, failure to promote, denial of transfer, or

refusal to hire,' such claims are not actionable if they occurred prior to the 300-day period even

though they may be 'related to' acts that occurred within the permissible 300-day period."  *Id.*

(quoting *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002)).  A claim of employment

discrimination under the ADEA accrues for statute of limitations purposes on the date the employee

learns of the employer's discriminatory conduct. *See Dickens v. Hudson Sheraton Corp., LLC*, 167 F. Supp. 3d 499, 514 (S.D.N.Y. 2016) (citing *Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980)).

Zoulas filed a complaint with the SDHR alleging age discrimination, retaliation, and hostile work environment on June 8, 2017, which was cross-filed with the EEOC on the same date. *See* FAC at ¶ 219; Declaration of Amanda Blair ("Blair Decl."), Ex. D at pg. 9. Accordingly, the Defendants argue that any "discrete discriminatory or retaliatory acts occurring [more than 300 days before the filing of the complaint] are time-barred." Motion to Dismiss at 13.

The Defendants are correct. To the extent that Zoulas bases her claims of discrimination or retaliation under the ADEA or her discrimination claim under Title VII on discrete acts that occurred before August 12, 2016—300 days before the filing of Zoulas' SDHR complaint—such claims are untimely. Any discrete discriminatory or retaliatory actions that occurred prior to August 12, 2016 are outside the scope of the ADEA and Title VII's 300-day statute of limitations. *See, e.g.*, *Hausdorf v. New York City Dep't of Educ.*, No. 17-CV-2115 (PAE)(SN), 2018 WL 1871945, at *5 (S.D.N.Y. Jan. 25, 2018).

In her Opposition, Zoulas argues that any events that occurred over 300 days before she filed her SDHR complaint are "part of an overall pattern of behavior . . . and should not be time-barred." Opposition at 5-6. To the extent that Zoulas argues that discrete discriminatory or retaliatory acts that occurred before August 12, 2016 are not untimely pursuant to the continuing violation doctrine, that argument fails. "The continuing violation doctrine provides that '[w]hen a plaintiff experiences a continuous practice and policy [that violates his or her rights], . . . the commencement of the statute of limitations period may be delayed until the last violation.'" *Flores v. United States*, 885 F.3d 119, 121 (2d Cir. 2018) (brackets in original) (quoting *Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994)). "To qualify as continuing, the claimed actions must not be 'discrete acts,' but 'repeated conduct' that 'occurs over a series of days or perhaps years.'" *Dash v. Bd. of Educ.*

*of City Sch. Dist. of New York*, 238 F. Supp. 3d 375, 388 (E.D.N.Y. 2017) (quoting *Morgan*, 536 U.S. at

115). Examples of discrete acts, for the purposes of the continuing violation doctrine, include

disparate disciplining, negative performance reviews, termination, failure to promote, and denial of a

preferred job position. *See, e.g.*, *Sirisena v. City Univ. of New York*, No. 17-CV-7135 (DLI) (RML),

2019 WL 1493220, at *5 (E.D.N.Y. Mar. 31, 2019); *Edner v. NYCTA-MTA*, 134 F. Supp. 3d 657,

663 (E.D.N.Y. 2015); *see also, e.g.*, *Glaser v. Fulton-Montgomery Cmty. Coll.*, 50 F. App'x 17, 20 (2d Cir.

2002). "[M]ultiple incidents of discrimination, even similar ones, that are not the result of a

discriminatory policy or mechanism do not amount to a continuing violation." *Lambert v. Genesee

Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993). Furthermore, "[a]s a general matter, the continuing violation

doctrine is heavily disfavored in the Second Circuit." *Trinidad v. New York City Dep't of Correction*, 423

F. Supp. 2d 151, 165 n.11 (S.D.N.Y. 2006).

Zoulas alleges only two discrete acts relevant to her retaliation and discrimination claims

under the ADEA that could be rendered timely by the continuing violation doctrine. These are

Zoulas' claims that the Defendants excluded her from participating in the Eco Schools Program and

STEM Lab during the 2015-2016 academic year. *See* FAC at ¶¶ 28-29. These alleged actions,

however, constitute discrete acts for purposes of evaluating the application of the continuing

violation doctrine. *See, e.g.*, *Sirisena*, 2019 WL 1493220 at *5 ("Indeed, denial of preferred job

assignments is a prototypical example of a discrete act that is not subject to the continuing violation

doctrine."). Accordingly, because these alleged acts occurred more than 300 days before Zoulas

filed her SDHR complaint and are not subject to the continuing violations doctrine, the Court will

not consider them in analyzing Zoulas' discrimination and retaliation claims under the ADEA.

Nevertheless, "even with respect to a claim of discrete discriminatory or retaliatory acts, expiration

of the limitations period does not bar 'an employee from using the prior acts as background

evidence in support of a timely claim.'" *Davis-Garett*, 921 F.3d at 42 (quoting *Morgan*, 536 U.S. at

113).

ii.   Hostile Work Environment Claim

To the extent that the Defendants argue that Zoulas is barred from asserting actions that occurred more than 300 days before the filing of her SDHR complaint in pleading her hostile work environment claim under the ADEA, that effort fails.  "While discrete claims of discrimination and retaliation must be brought within the 300-day limitations period to be actionable, a different rule applies with regard to hostile work environment claims."  *Spence v. Bukofzer*, 15 Civ. 6167 (ER), 2017 WL 1194478, at *5 (S.D.N.Y. Mar. 30, 2017) (citing *Morgan*, 536 U.S. at 122).  "Hostile environment claims are different in kind from discrete acts," because "[t]heir very nature involves repeated conduct" and "cannot be said to occur on any particular day."  *Morgan*, 536 U.S. at 122.  Rather, such unlawful employment practice "occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own."  *Id.*  The Supreme Court has explained that, as long as any act contributing to the hostile work environment claim falls within the 300-day period, "the entire time period of the hostile environment may be considered by a court for the purposes of determining liability."  *Id.* at 117; *see also Mohamed v. NYU*, No. 14-CV-8373 (GBD) (MHD), 2015 WL 3387218, at *16 (S.D.N.Y. May 21, 2015) ("Generally, hostile work environment claims typically merit application of the continuing violations doctrine because they cannot occur on any particular day.").  Accordingly, Zoulas is not barred from asserting that actions that occurred before August 12, 2016 contributed to the hostile work environment claim that she asserts under the ADEA.

## B. Zoulas' Discrimination Claim under the ADEA

Zoulas contends that the Defendants discriminated against her based on her age in violation of the ADEA.[3]  The ADEA makes it unlawful for an employer "to discharge any individual or

---

[3] Zoulas asserts claims of discrimination, retaliation, and hostile work environment under the ADEA against all

otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). "To survive a motion to dismiss an age discrimination claim brought under the ADEA . . . a plaintiff must plausibly allege that she 'is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Luka v. Bard Coll.*, 263 F. Supp. 3d 478, 484-85 (S.D.N.Y. 2017) (quoting *Littlejohn*, 795 F.3d at 311).

The Court takes this opportunity to comment on one developing distinction regarding the pleading requirements for a discrimination claim under the ADEA—namely, whether a plaintiff in an ADEA case must plead "but-for" causation, or whether she may satisfy the pleading standard by merely providing minimal support for the proposition that the defendant was motivated by discriminatory intent. Courts in this District have applied different standards in a number of recent cases. *Compare, e.g.*, *Tsismentzoglou v. Milos Estiatorio Inc.*, No. 18-CV-9664 (RA), 2019 WL 2287902, at *3 (S.D.N.Y. May 29, 2019) (requiring plaintiff to plead "but-for" causation to assert discrimination claim under the ADEA); *Downey v. Adloox Inc.*, 238 F. Supp. 3d 514, 519 (S.D.N.Y. 2017) (same); *with Luka*, 263 F. Supp. 3d at 484-85 (requiring plaintiff to plead minimal support for the proposition that defendant was motivated by discriminatory intent to assert discrimination claim under the ADEA); *Ahmad v. White Plains City Sch. Dist.*, No. 18-CV-3416 (KMK), 2019 WL 3202747, at *7 (S.D.N.Y. July 16, 2019) (same).

The different pleading standards applied by these courts may stem from a tension between two decisions by the Second Circuit issued in 2015: *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72 (2d Cir. 2015), which seems to be the principal support for those courts that have applied a "but-

---

Defendants. However, in the Second Circuit, individuals may not be held liable under the ADEA. *See Wang v. Palmisano*, 157 F. Supp. 3d 306, 338 (S.D.N.Y. 2016) (citing cases). Accordingly, Zoulas' ADEA claims against Asselta and Lore are dismissed. The Department of Education is the only remaining defendant with respect to Zoulas' ADEA claims.

for" pleading standard, and *Littlejohn v. City of New York*, 795 F.3d 297 (2d Cir. 2015), which

reinforced the distinction between the standard of pleading and the burden of proof with respect to

evidentiary matters.

In *Vega v. Hempstead Union Free Sch. Dist.*, the Second Circuit stated that "the Supreme Court

has held that a plaintiff alleging age discrimination under the Age Discrimination in Employment

Act must allege 'that age was the but-for cause of the employer's adverse action.'" 801 F.3d 72, 86

(2d Cir. 2015) (quoting *Gross v. FBL Fin. Servs. Inc.*, 557 U.S. 167, 177 (2009)). Understandably—

given its pedigree—district courts in the Second Circuit have relied on this description of the

pleading standard for ADEA cases.

Like other courts, however, this Court does not read *Gross* to have established a pleading

standard. *See Tweedy v. City of New York*, No. 1:18-CV-1470 (ALC), 2019 WL 1437866, at *4

(S.D.N.Y. Mar. 29, 2019) ("[T]he Supreme Court's holding in *Gross* addressed a plaintiff's burden of

persuasion at trial and did not affect a plaintiff's pleading obligations under *Swierkiewicz* since

establishing a prima facie case is an 'evidentiary standard and not a pleading requirement.'") (quoting

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002)); *Fagan v. U.S. Carpet Installation, Inc.*, 770 F.

Supp. 2d 490, 496 (E.D.N.Y. 2011 ) (noting that *Gross* does not impose an obligation on a plaintiff

stating an age discrimination claim to plead but-for causation because standards of proof are distinct

from pleading requirements). Rather, *Gross* appears to describe the burden of persuasion in ADEA

cases. The language in *Gross* quoted by the *Vega* court as having established the pleading standard

for ADEA cases reads in full as follows: "It follows, then, that under § 623(a)(1), the plaintiff

retains the burden of persuasion to establish *that age was the 'but-for' cause of the employer's adverse action*."

*Gross*, 557 U.S. at 177 (emphasis added to identify language quoted in *Vega*). And the Supreme

Court summarized its holding in *Gross* as follows: "We hold that a plaintiff bringing a disparate-

treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age

was the 'but-for' cause of the challenged adverse employment action." *Id.* at 180. The Court understands from this text that the Supreme Court's decision in *Gross* set forth an evidentiary standard of proof, rather than a pleading standard.

In *Littlejohn*, decided the same year as *Vega*, the Second Circuit reinforced the distinction between an evidentiary standard and a pleading requirement. *Littlejohn*, 795 F.3d at 308. Guided by the Supreme Court's decision in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), the Second Circuit stated that a plaintiff in a Title VII matter need not plead the elements of a *prima facie* case under the *McDonnell Douglas* framework, because it was an evidentiary standard. Instead, the Circuit emphasized that such a plaintiff "need only give plausible support to a minimal inference of discriminatory motivation." *Id.* at 311.

Understanding the "but-for" causation requirement described in *Gross* as an evidentiary standard, it is somewhat difficult to justify grafting it into the pleading standard for an ADEA claim. At their most basic level, *Swierkiewicz* and *Littlejohn* stand for the proposition that a plaintiff's pleading standard does not track the burden of proof, and that enhanced pleading requirements for employment discrimination claims are inconsistent with Rule 8's simplified notice pleading standard. *Swierkiewicz*, at 515. The Court understands the Second Circuit's statement in *Vega* regarding the pleading standard applicable to ADEA cases to have been dicta because no ADEA claims were at issue in that decision; in that case, the Second Circuit substantively analyzed only claims arising under Title VII and equal protection claims arising under § 1983. As a result, here the Court follows the "minimal inference" standard described in *Littlejohn*, and does not require the Plaintiff to plead "but-for" causation.

i. <u>Zoulas States a Claim for Employment Discrimination under the ADEA</u>

1. *Protected Class*

Zoulas represents that she is 57-years-old and that she was 55 years old when the

Administrators began discriminating against her because of her age. *See* FAC at ¶¶ 1, 7. Accordingly, she has adequately pleaded that she belongs to a protected class. *See* 29 U.S.C. § 631(a) (providing that the ADEA applies to individuals who are at least 40 years of age).

### 2. *Qualification for the Position*

To satisfy the second element required to plead a discrimination claim under the ADEA, a "plaintiff must show only that he possesses the basic skills necessary for performance of [the] job." *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 92 (2d Cir. 2001). Zoulas alleges that she has been teaching for over 19 years and that she received exemplary evaluations for each of those years. *See* FAC at ¶¶ 10, 51. Zoulas, therefore, has plausibly alleged that she is qualified for her position.

### 3. *Adverse Employment Action*

Next, Zoulas must plausibly allege that she suffered an adverse employment action. A plaintiff sustains an adverse employment action if she "endures a materially adverse change in the terms and conditions of employment." *Kassner*, 496 F.3d at 238. "To be materially adverse, a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* "A change that is "materially adverse" could consist of, *inter alia*, "a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices … unique to a particular situation." *Id.* (omission in original) (internal quotation marks and citation omitted).

Zoulas' complaint can be read to allege that the Administrators subjected her to a number of actions during the course of her employment that she believes to have been adverse. The Court addresses each of these actions in turn to evaluate whether they constitute the kind of "adverse employment actions" required to plead her claim. First, Zoulas' negative observation reports, feedback, and inferior teacher ratings during the 2016-2017 and 2017-2018 academic years do not constitute adverse employment actions in and of themselves. *See, e.g.*, *Durick v. New York City Dep't of*

*Educ.*, 202 F. Supp. 3d 277, 287 (E.D.N.Y. 2016) ("[N]egative performance evaluations do not,

without more, constitute adverse employment actions."); *Dimitracopoulos*, 26 F. Supp. 3d at 213

("Criticism of an employee in the course of evaluating and correcting his or her work is not, in and

of itself, a materially adverse employment action.") (citing *Weeks v. N.Y. State Div. of Parole*, 273 F.3d

76, 86 (2d Cir. 2001)). Furthermore, while Zoulas repeatedly alleges that Asselta made "negative and

abusive" comments in connection with her observation feedback, "a thin-skinned worker's reaction

to . . . criticism will not support a claim of age discrimination." *Dimitracopoulos*, 26 F. Supp. 3d at 213

(collecting cases); *see, e.g.*, FAC at ¶¶ 90, 113-114.

However, "'[n]egative employment evaluation letters may . . . be considered adverse' if they

trigger other negative consequences in the terms and conditions of the plaintiff's employment . . . ."

*Dimitracopoulos*, 26 F. Supp. 3d at 214 (quoting *Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir.

2002)). Zoulas does not allege that she suffered any negative consequences in the terms and

conditions of her employment as a result of her observation reports from the 2016-2017 and 2017-

2018 academic years. In the Opposition, however, Zoulas contends that she suffered two adverse

employment actions when she applied for per session activities[4] in September of 2016 and January

of 2017.[5] Opposition at 11. On both of these occasions, Zoulas claims that she was denied the

right to pursue per session work because the Administrators put her on a TIPS plan after she

received an overall rating of Developing for the 2015-2016 academic year. *Id.* In the Opposition,

Zoulas contends that the Developing rating that she received "was both undeserved and

unsupported by documentation" and that the "motivation for [putting her on the TIPS plan was]

---

[4] Per session activities "are done either before school, after school, on the weekend or holidays . . . or during the summer
. . . . Per session consists of any activity in which pedagogical, pupil personnel service providers and supervisory
employees are paid at an hourly rate depending on their particular title." "Per Session Jobs" New York City Department
of Education, http://www.schools.nyc.gov/careers/other-jobs-in-schools/per-session-jobs (last visited August 22,
2019).
[5] A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in her papers
opposing the motion. *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013).

age discrimination." Opposition at 14-15. Decisions by judges in this Circuit have found that a plaintiff's inability to pursue per session work as a result of poor performance reviews rises to the level of an adverse employment action. *See, e.g.*, *Trachtenberg v. Dep't of Educ. of City of New York*, 937 F. Supp. 2d 460, 470 (S.D.N.Y. 2013); *Dressler v. New York City Dep't of Educ.*, No. 10 CIV. 3769 (JPO), 2012 WL 1038600, at *7 (S.D.N.Y. Mar. 29, 2012); *Ximines v. New York City Dep't of Educ.*, No. 05-CV-1214, 2011 WL 2607935, at *5 n.4 (E.D.N.Y. July 1, 2011); *Shapiro v. New York City Dep't of Educ.*, 561 F. Supp. 2d 413, 423 (S.D.N.Y. 2008). Accordingly, Zoulas has sufficiently alleged an adverse employment action because of her September 2016 Developing rating.[6]

The disciplinary letters that Zoulas received do not constitute an adverse employment action. *See, e.g.*, *Aiello v. Stamford Hosp.*, No. 3:09-CV-1161 (VLB), 2011 WL 3439459, at *13 (D. Conn. Aug. 8, 2011) ("Courts in the Second Circuit have held that 'an employee does not suffer a materially adverse change in the terms and conditions of employment where the employer merely enforces its preexisting disciplinary policies.'") (quoting *Joseph v. Leavitt*, 465 F.3d 87, 91 (2d Cir. 2006)). The Defendants' denying Zoulas her preferred teaching assignment does not constitute an adverse employment action. *See, e.g.*, *Aspilaire v. Wyeth Pharmaceuticals, Inc.*, 612 F. Supp. 2d 289, 304 (S.D.N.Y. 2009); *see also Lebowitz v. New York City Dep't of Educ.*, No. 15-CV-2890 (LDH) (ST), 2017

---

[6] The Court pauses to address the question of timeliness. Zoulas alleges, in the Opposition that she received an overall rating of Developing for the 2015-2016 academic year in September of 2016. Opposition at 9, 14. Presumably, the classroom observations that resulted in Zoulas' overall rating of Developing occurred during the 2015-2016 academic year and, therefore, before August 12, 2016—300 days before the filing of Zoulas' SDHR complaint. Still, however, Zoulas alleges that the Developing rating that she received in September of 2016 was falsified and the product of discrimination based on her age. The classroom observations for the 2015-2016 academic year likely occurred before August 12, 2016 and, therefore, cannot support Zoulas' age discrimination claim. However, the allegedly discriminatory rating that she received in September 2016 that led to the denial of her per session work opportunities is timely. Because the Court must draw all reasonable inferences in Zoulas' favor, *Shaar Fund, Ltd*, 493 F.3d at 98, the Court concludes that she has alleged that she suffered an adverse employment action as a result of the Developing rating that she received in September of 2016. *See Dressler*, 2012 WL 1038600, at *7. In the Reply, the Defendants do not address Zoulas' claim that she suffered an adverse employment action as a result of the overall Developing rating that she received in September of 2016.

WL 1232472, at *7.  Similarly, the Defendants' selecting another teacher to lead the Green Stem

After-School program, for which Zoulas applied, does not constitute an adverse employment action.

*See, e.g., Williams v. Addie Mae Collins Cmty. Serv.*, No. 11 CIV. 2256 (LAP), 2012 WL 4471544, at *3

(S.D.N.Y. Sept. 27, 2012).

      Furthermore, Zoulas' claims that the Defendants embarrassed, demeaned, intimidated, and

excessively scrutinized her do not constitute adverse employment actions.  *See, e.g., Culmone-Simeti*,

No. 17 CIV. 2313 (ER), 2018 WL 3384437, at *7 (S.D.N.Y. July 11, 2018) (holding that harassment

and disrespectful behavior does not constitute an adverse employment action); *Honey v. Cnty. of

Rockland,* 200 F. Supp. 2d 311, 320 (S.D.N.Y. 2002) ("[E]xcessive scrutiny do[es] not constitute

adverse employment action in the absence of other negative results."); *Trachtenberg*, 937 F. Supp. 2d

460, 467 (S.D.N.Y. 2013) (holding that an employer's efforts to intimidate an employee does not

constitute an adverse employment action).  Similarly, Zoulas' claim that she received inferior

computers and technological equipment does not constitute an adverse employment action.  *See, e.g.,

Panayiotou v. New York City Dep't of Educ.*, No. 18-CV-06522 (AMD)(SMG), 2019 WL 2453438, at *3

(E.D.N.Y. June 12, 2019); *Shapiro v. New York City Dep't of Educ.*, 561 F. Supp. 2d 413, 427 (S.D.N.Y.

2008).

      Zoulas' allegation that the Administrators failed to provide her with professional

development opportunities do not rise to the level of an adverse employment action on their own.

"The denial of professional training opportunities may constitute an adverse employment action, but

only where an employee can show 'material harm' from the denial, 'such as a failure to promote or a

loss of career advancement opportunities.'"  *Trachtenberg*, 937 F. Supp. 2d at 468 (quoting *Hill v.

Rayboy-Brauestein*, 467 F. Supp. 2d 336, 351-52 (S.D.N.Y. 2006)).  Here, Zoulas alleges that she

performed her own professional development using online resources in her own time.  FAC at

¶ 190.  She further contends that she was not compensated for this time.  *Id.* at ¶ 190.  This,

however, does not rise to the level of an adverse employment action.  *See Sekyere v. City of N.Y.*, No. 05 Civ. 7192 (BSJ) (DCF), 2009 WL 773311, at *4 (S.D.N.Y. Mar. 18, 2009) ("Plaintiff does not contend that her position was altered in any way by not receiving some specific training, nor does she contend that she was disciplined, demoted, transferred, or terminated . . . . Accordingly, any failure by Defendants to provide Plaintiff with training does not rise to the level of an adverse employment action.").  Therefore, Zoulas has stated an adverse employment action only with respect to her receipt of a rating of Developing for the 2015-2016 academic year.[7]

### 4.  *Discriminatory Intent*

Zoulas has pleaded facts that provide "at least minimal support for the proposition that [her] employer was motivated by discriminatory intent."  *Luka*, 263 F. Supp. 3d at 484-85 (quoting *Littlejohn*, 795 F.3d at 311).  Zoulas alleges that the Asselta made derogatory comments about her and her job performance based on her age.  Specifically, Zoulas claims that Asselta claimed stated that she "was getting up there in years and [was] too old for this job and should just retire."  FAC at ¶ 136.  Zoulas further claims that Asselta said that Zoulas "appears tired and old and isn't physically up to managing the class, and that she should just retire."  Finally, Zoulas claims that Asselta told her "[y]ou're a dinosaur and it's time you started taking advice from the young teachers.  You're trapped in a time warp."  *Id.* at ¶ 283.  These comments provide at least minimal support for the proposition that the Asselta were motivated by discriminatory intent.

Zoulas also pleads facts regarding the Administrators' conduct with respect to other staff members who were over the age of 40 that provide support for the proposition that the

---

[7] In the complaint, Zoulas alleges that the implementation of the FSF in the School motivates the Administrators to discriminate against her.  Specifically, Zoulas asserts that this funding model creates an incentive for the Administrators to "replace employees who are more highly compensated with lower-salaried employees."  FAC at ¶ 203.  However, Zoulas does not allege that she suffered an adverse employment action as a result of the application of the FSF.  Furthermore, the School's implementation of the FSF does not constitute an adverse employment action in and of itself.  Accordingly, Zoulas' reference to the School's implementation of the FSF in the complaint does not plead actionable discrimination.

Administrators were motivated by discriminatory intent.  For example, Zoulas alleges that the Administrators harassed, filed false allegations against, and transferred Fantuzzi—who was 63—to another school.  FAC at ¶¶ 207-12.  Additionally, Zoulas alleges that Asselta assigned Czaskiewicsz—who was 62—to teach a new position.  Zoulas claims that Lore and Asselta then pummeled her with negative reviews until she resigned.  *Id.* at ¶¶ 213-14.  These allegations, when combined with the direct comments Asselta made to Zoulas about her age, provide at least minimal support for the proposition that the Administrators were motivated by discriminatory intent.  Accordingly, Zoulas has pleaded a discrimination claim under the ADEA with respect to her receiving a rating of Developing for the 2015-2016 academic year.

### C.  Zoulas' Retaliation Claim under the ADEA

Zoulas contends that the Administrators retaliated against her for filing a complaint with the SDHR.  "The ADEA . . . prohibits 'employer actions that are likely to deter victims of discrimination from complaining to the EEOC, the courts, and their employers.'"  *Davis-Garett*, 921 F.3d at 42-43 (quoting *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).  Specifically, the ADEA provides that "[i]t shall be unlawful for an employer to discriminate against any of his employees . . . because such individual . . . has opposed any practice made unlawful by this section, or because such individual has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter."  29 U.S.C. § 623(d).

"To state a claim for retaliation under the ADEA, a plaintiff must allege that (1) [she] was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action."  *Klein v. Brookhaven Health Care Facility*, No. 17-cv-4841 (JSA)(KT), 2019 WL 1459258, at *7 (E.D.N.Y. Mar. 11, 2019); *see also Pfizenmayer v. Hicksville Pub. Sch.*, No. 15-CV-6987 (SJF)(SIL), 2017 WL 5468319, at *11 (E.D.N.Y. Jan. 24, 2017).  With respect to the third element,

materially adverse actions, "the proper question for a retaliation claim is whether the [alleged adverse action] to which [the plaintiff] was subjected could well have dissuaded a reasonable employee in his position from complaining of unlawful discrimination." *Davis-Garett*, 921 F.3d at 44 (internal citation and quotation marks omitted). "The Supreme Court and Second Circuit have defined 'adverse action' for the purposes of [an ADEA] retaliation claim broadly." *Cerni v. J.P. Morgan Sec. LLC*, 208 F. Supp. 3d 533, 539. A plaintiff need only "show that a reasonable employee would have found the challenged action materially adverse, which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 539. "[T]he broadness of this definition means that 'the scope of [the] anti-retaliation provision is broader than that of its discriminatory action provision." *Id.* at 539 (quoting *Patane v. Clark*, 508 F.3d 106, 116 (2d Cir. 2007)). For the reasons explained below, Zoulas has adequately pleaded a claim of retaliation under the ADEA.

i. Zoulas States a Claim for Retaliation under the ADEA

1. *Protected Activity*

First, Zoulas alleges that she engaged in protected activity by filing her complaint with the SDHR on June 8, 2017. Filing such a complaint constitutes protected activity. *See, e.g.*, *Ulrich v. Moody's Corp.*, No. 13-CIV-0008 (VSB)(MHD), 2014 WL 12776746, at *17 (S.D.N.Y. Mar. 31, 2014)(citing *Clark Cty. School Dist. v. Breedeen*, 532 U.S. 268, 273 (2001)). Accordingly, Zoulas has plausibly alleged that she engaged in protected activity.

## 2. *The Defendants were Aware of the Protected Activity*

Zoulas alleges that the Administrators knew about her filing the SDHR complaint. *See* FAC at ¶¶ 94, 219. Therefore, Zoulas has pleaded that the Administrators were aware of the protected activity.

## 3. *Materially Adverse Action*

The Court construes Zoulas' complaint to allege that the Administrators subjected her to a number of materially adverse actions in retaliation for filing her SDHR complaint.[8] These actions include: (i) her receiving an overall rating of Developing in September of 2016; (ii) her receiving an overall rating of Developing for the 2017-2018 academic year; (iii) her exclusion from the school directory in October of 2017; (iv) her difficulty in having her field trip approved in November of 2017; (v) her being pressured to sign observation reports without a proper opportunity to review them in March and May of 2018; (vi) the Defendants' recruitment of Peluso to harass her and make false accusations against her in January and March of 2018; and (vii) the Defendants' recruitment of Guito to harass her in February of 2018.

Zoulas has pleaded a number of actions that might have dissuaded a reasonable worker from making or supporting a charge of discrimination. Specifically, Zoulas has pleaded a materially adverse action with respect to her overall rating of Developing for the 2015-2016 academic year and her overall rating of Developing for the 2017-2018 academic year. *See, e.g., Cerni*, 208 F. Supp. 3d at

---

[8] To the extent that Zoulas seeks to argue that any actions that the Defendants carried out before the filing of the SDHR complaint constitute an adverse employment action for the purposes of her ADEA retaliation claim, that effort fails. *See, e.g., Sesay-Harrell v. NYC Dep't of Homeless Servs.*, No. 12 CIV. 925 (KPF), 2013 WL 6244158, at *20 (S.D.N.Y. Dec. 2, 2013) (explaining that defendants cannot have retaliated against protected conduct that had yet to occur). Furthermore, in the complaint, Zoulas alleges that Lore "screamed loudly and viciously" at her students in retaliation for her sending an e-mail to Asselta to complain about Guito's observing her classroom on February 27, 2018. Here, Zoulas has not adequately pleaded a retaliation claim related to her e-mail to Asselta because she has failed to plead facts that would allow the Court to reasonably infer that she engaged in protected activity known to the Defendants by sending this e-mail. Specifically, Plaintiff does not allege that, in the e-mail to Asselta, she complained about discrimination or harassment based on her age. Accordingly, the Court does not include Lore's screaming at Zoulas' students in its assessment of Zoulas' ADEA retaliation claim. *See Ulrich*, 2014 WL 12776746, at *17.

538-39 (holding that a negative performance review might have dissuaded a reasonable worker from making or supporting a charge of discrimination so as to adequately plead materially adverse action for plaintiff's ADEA retaliation claim); *see also Wheeler v. Bank of New York Mellon*, No. 616-CV-1176 (LEK) (TWD), 2018 WL 3730862, at *10 (N.D.N.Y. Aug. 6, 2018) (same).

Zoulas has also pleaded a materially adverse action with respect to the Administrators' pressuring Zoulas to sign her observation reports without the opportunity to review them. As explained above, the Administrators allegedly wrote false, critical feedback on the observation reports after Zoulas declined to sign them under rushed circumstances. Zoulas was subjected to unfair criticism that had the potential to influence her teaching evaluations after being deprived of the time and process afforded to other teachers to review their observation reports. The Administrators' conduct might have dissuaded a reasonable worker from making or supporting a charge of discrimination. *See, e.g., Cerni*, 208 F. Supp. 3d at 538-39.

The Court also concludes that Zoulas' allegations that Asselta recruited her peers to harass her and to lodge false accusations of wrongdoing against her might have dissuaded a reasonable worker from making or supporting a charge of discrimination. Accordingly, Zoulas has adequately pleaded a materially adverse action with respect to her claim that Asselta recruited her colleagues to harass her.

Zoulas, therefore, has pleaded a materially adverse action with respect to: (i) her receiving an overall rating of Developing in September of 2016; (ii) her receiving an overall rating of Developing for the 2017-2018 academic year; (iii) her being pressured to sign her observation reports without a proper opportunity to review them; (iv) Asselta's recruiting Peluso to harass her and make false accusations against her; and (v) Asselta's recruiting Guito to harass her. The Court next addresses whether Zoulas has plausibly alleged a causal connection between the protected activity and these materially adverse actions.

4. *Causal Connection*

Zoulas has adequately pleaded causation. Decisions by judges in this Circuit have considered temporal proximity between a protected activity and a materially adverse action sufficient to plead causal connection for an ADEA retaliation claim. *See, e.g.*, *Barrer-Cohen v. Greenburgh Cent. Sch. Dist.*, No. 18 CIV. 1847 (NSR), 2019 WL 3456679, at *6 (S.D.N.Y. July 30, 2019); *Jones v. New York City Dep't of Educ.*, 286 F. Supp. 3d 442, 449 (E.D.N.Y. 2018); *Blundell v. Nihon Kohden Am.*, No. 1:15-CV-1503 (GTS)(DEP), 2017 WL 318842, at *13 (N.D.N.Y. Jan. 23, 2017). With respect to the five materially adverse actions described above, only one—Zoulas' receipt of a rating of Developing in September of 2016—preceded her protected activity. The remaining four materially adverse actions occurred in the eight months following Zoulas' filing of her SDHR complaint. Eight months is a substantial temporal gap. However, in her complaint, Zoulas claims that the Administrators purposefully deferred retaliating against her until the SDHR had completed its investigation. The incidents at issue happened shortly after the SDHR's evaluation was complete. In addition, Zoulas contends that the frequency and intensity of the Administrators' conduct intensified after the SDHR dismissed her complaint. Therefore, Zoulas has plausibly pleaded the causal connection prong of her retaliation claim under the ADEA. Accordingly, Zoulas has pleaded a claim for retaliation under the ADEA.

### D. Zoulas' Hostile Work Environment Claim under the ADEA

Zoulas next contends that the Administrators subjected her to a hostile work environment. "With respect to an individual over the age of 40, the ADEA makes it unlawful for an employer to 'discriminate against [the] individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's age.'" *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (citing 29 U.S.C. §§ 623(a)(1), 631(a)). The ADEA prohibits "requiring people to work in a discriminatorily hostile or abusive environment." *Id.* Under the ADEA, "'[a] work

environment will be considered hostile if a reasonable person would have found it to be so and if the plaintiff subjectively so perceived it' because of conduct based on the plaintiff's over-40 age." *Davis-Garett*, 921 F.3d at 41 (quoting *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999)). A workplace is hostile "[when] [it] is permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Id.* at 41. "Isolated, minor acts or occasional episodes do not warrant relief, but that does not mean that employers are free from liability in all but the most egregious cases." *Id.*

To "state a claim for hostile work environment in violation of the ADEA, the plaintiff must plausibly allege that the workplace is 'permeated with discriminatory intimidation, ridicule and insult that it is sufficiently pervasive to alter the conditions of the victim's employment.'" *Ingrassia v. Health & Hosp. Corp.*, 130 F. Supp. 3d 709, 722 (E.D.N.Y. 2015) (quoting *Kassner*, 496 F.3d at 240). While a plaintiff "need not present a list of specific acts[,]" "[m]inor incidents do not merit relief." *Kassner*, 496 F.3d at 241. The acts must be "sufficiently continuous and concerted to be considered pervasive." *Id.* An inquiry into whether a work environment is hostile under the ADEA requires an assessment based on the totality of the circumstances. *Lopez v. New York City Dep't of Educ.*, No. 17-CV-9205 (RA), 2019 WL 2647994, at *4 (S.D.N.Y. June 26, 2019) (internal citation and quotation marks omitted). "In determining whether a plaintiff meets the 'severe or pervasive' standard, courts must consider the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with a plaintiff's job performance." *Harewood v. New York City Dep't of Educ.*, No. 18-CV-05487 (KPF)(KHP), 2019 WL 3042486, at *4 (S.D.N.Y. May 8, 2019) (quoting *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 745 (2d Cir. 2003)).

i. <u>Zoulas has Plausibly Alleged a Hostile Work Environment</u>

Zoulas has pleaded a claim for hostile work environment in violation of the ADEA. Zoulas'

complaint describes numerous specific, concerted, and continuous allegations of harassment and

ridicule based on her age over the course of multiple years. Zoulas alleges, for example, that she was

subjected to numerous comments stating that her age affected her ability to instruct and manage her

students. *See, e.g.*, FAC at ¶ 136 (Zoulas "was getting up there in years and [was] too old for this job

and should just retire."); *id.* at ¶ 171 (Zoulas "appears tired and old and isn't physically up to

managing the class, and that she should just retire"); *id.* at ¶ 283 ("You're a dinosaur and it's time

you started taking advice from the young teachers. You're trapped in a time warp."). The Second

Circuit has found such comments, combined with other discriminatory acts based on a plaintiff's

age, sufficient to plead a hostile work environment claim. *See Kassner*, 496 F.3d at 240-41 (holding

that plaintiff pleaded hostile work environment claim where she alleged that her manager and other

managers "repeatedly made degrading comments" regarding her age).

Zoulas also alleges that the Administrators instructed her to change rooms without

providing rationale for doing so, while declining to ask younger teachers to change rooms. *See* FAC

at ¶ 44. Decisions by judges in this District have considered this type of behavior, combined with

other conduct, adequate to plead a hostile work environment claim. *See, e.g.*, *Macalister v. Millennium

Hotels & Resorts et al.*, No. 17 CIV. 6189 (ER), 2019 WL 3765825, at *5 (S.D.N.Y. Aug. 9, 2019).

Additionally, Zoulas contends that she has been denied professional development opportunities for

at least two years while teachers in their 20's and 30's have been afforded them. And, as explained

above, Zoulas contends that she was repeatedly reviewed unfairly and harshly while the

Administrators extolled teachers with less than one year of experience and instructed her to learn

from them.

Furthermore, Zoulas claims that the Administrators instructed other staff members not to

speak to her and directed them to harass her, call her classroom to disrupt her instructional time, and remove functioning equipment from her classroom. She further alleges that the Administrators repeatedly and over time berated and embarrassed her in front of her peers, students, and parents, which diminished her authority. *Cf. Alfano v. Costello*, 294 F.3d 365, 381 (2d Cir. 2002) (holding that plaintiff did not experience a hostile work environment because, *inter alia*, she did not "point[ ] to any conduct that endangered her or her authority . . . ."). Here, considering the totality of the circumstances, including the continuity and severity of the age-based harassment and discrimination that Zoulas alleges, the Court concludes that she has plausibly pleaded a work environment that a reasonable person could find hostile or abuse.

### E. Disability Discrimination under the ADA and Religious Discrimination under Title VII

The Court dismisses Zoulas' disability discrimination claim asserted under the ADA and her religious discrimination claim brought under Title VII for failing to exhaust her administrative remedies. "The ADA requires that a plaintiff exhaust all available remedies before filing an employment discrimination action." *Kelly v. North Shore-Long Island Jewish Health System*, 166 F. Supp. 3d 274, 288 (S.D.N.Y. 2016); *see also Curto v. Edmunson*, 392 F.3d 502, 503 (2d Cir. 2004) (affirming district court's dismissal of plaintiff-appellant's ADA claims for failing to exhaust her administrative remedies). Similarly, "[i]t is well established that Title VII requires a plaintiff to exhaust administrative remedies before filing suit in federal court." *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 384 (2d Cir. 2015).

However, "claims not raised in an EEOC complaint may still be part of the complaint later filed in federal court if they are 'reasonably related' to the claim filed with the agency." *Littlejohn*, 795 F.3d at 322 (quoting *Williams v. New York City Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006)). "A claim is considered reasonably related if the conduct complained of would fall within the scope of the . . . investigation which can reasonably be expected to grow out of the charge that was made." *Fitzgerald*

*v. Henderson*, 251 F.3d 345, 359–60 (2d Cir. 2001). In evaluating administrative exhaustion under this standard, the Court should consider whether "the factual allegations made in the administrative complaint can be fairly read to encompass the claims ultimately pleaded in a civil action." *Gomez v. New York City Police Dep't*, 191 F. Supp. 3d 293, 299 (S.D.N.Y. 2016) (quoting *Mathirampuzha v. Potter*, 548 F.3d 70, 77 (2d Cir. 2008)). "The central question is whether the complaint . . . gave th[e] agency 'adequate notice to investigate discrimination on both bases.'" *Williams*, 458 F.3d at 70 (quoting *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003)).

In Zoulas' SDHR complaint, she did not allege that she was discriminated against on the basis of religion or disability.[9] On the complaint form, Plaintiff selected that she had been discriminated against on the basis of her age. Zoulas did not check the boxes for disability based on religion or disability. *See* Blair Decl., Ex. D at 4. Zoulas attached an addendum to her SDHR complaint in which she described the discrimination that she experienced. The addendum is devoid of any mention of religious discrimination or Lore's prayer group.

There is barely more fodder for her disability discrimination claim under the ADA. To argue that her ADA claim is not barred for failure to exhaust her administrative remedies, Zoulas points to one allegation in the SDHR complaint and two statements that she included in her rebuttal (the "Rebuttal"). The SDHR complaint contains the following assertion:

> At the start of the school year I had 3 students accompany me to move my classroom to another room . . . . The principal immediately told them to leave and would not allow them to assist me. The principal allowed younger teachers at the school to bring in their children to help them set up their classroom.

Blair Decl., Ex. D at 7. Zoulas also draws the Court's attention to two statements that she included

---

[9] The Court also observes that, in the Opposition, Zoulas does not respond to the Defendants' argument that the Court should dismiss her religious discrimination claim under Title VII because she has not exhausted her administrative remedies. A court "may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." *Lipton v. Cty. of Orange*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004). In light of Zoulas' status as a *pro se* litigant, however, the Court does not deem Zoulas' religious discrimination claim abandoned.

in the Rebuttal. First, in the Rebuttal, Zoulas writes that she told Lore, "I really need help setting my classroom up . . . I am not able to do a lot of heavy lifting" after Lore told Zoulas' student-helpers to go home. Blair Decl., Ex. G. at 1. Second, in the Rebuttal, Zoulas explains that "it is common for an older person to become afflicted with an ailment of some type. They can see that as an older person I walk more slowly and have difficulty carrying things, and without helpers it would be very difficult to get my room set up." *Id.* at 7.

These statements did not give the agency "adequate notice" to investigate whether Zoulas suffered discrimination based on disability. Any physical maladies that Zoulas describes or hints at in these statements are framed as the natural product of her advancing age—the basis on which she claims that she was discriminated against in her SDHR complaint. Because Zoulas failed to allege any facts that may have given the SDHR "adequate notice" to investigate either disability or religious discrimination, neither Zoulas' ADA nor her Title VII claim is "reasonably related" to the SDHR complaint in which she alleged age discrimination. The Court dismisses Zoulas' ADA and Title VII claims without prejudice in light of her failure to exhaust her administrative remedies. *See, e.g.*, *McCray v. Project Renewal, Inc.*, No. 15-CV-8494 (VEC), 2017 WL 715010, at *3 (S.D.N.Y. Feb. 22, 2017).

## VI.    CONCLUSION

For the reasons stated above, the Defendants' motion to dismiss Zoulas' discrimination claim under the ADEA is denied. The Defendants' motion to dismiss Zoulas' retaliation claim under the ADEA is denied. The Defendants' motion to dismiss Zoulas' hostile work environment claim under the ADEA is denied. Zoulas' disability discrimination claim under the ADA is dismissed without prejudice. The Court grants Zoulas leave to replead this claim. Zoulas' religious discrimination claim under Title VII is dismissed without prejudice. The Court grants Zoulas leave to replead this claim.

The Court requests that counsel for the Defendants provide Zoulas with copies of any unpublished cases cited in this decision pursuant to Local Rule of the United States District Court for the Southern and Eastern Districts of New York 7.2.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 43. The Clerk of Court is further directed to mail a copy of this order to Plaintiff by first-class and certified mail.

SO ORDERED.

Dated: August 29, 2019
        New York, New York

_____
GREGORY H. WOODS
United States District Judge